MICHAEL R. MUSHKIN, ESQ.
Nevada State Bar No. 2421
L. JOE COPPEDGE, ESQ.
Nevada State Bar No. 4954
**MUSHKIN • CICA • COPPEDGE**
4495 S. Pecos Road
Las Vegas, Nevada 89121
Telephone: 702-386-3999
Facsimile: 702-454-3333
michael@mccnvlaw.com
jcoppedge@mccnvlaw.com

Attorneys for Plaintiff
*ATM Merchant Systems*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JB CARTER ENTERPRISES, LLC DBA ATM MERCHANT SYSTEMS, a Nevada limited-liability company | Case No.:  2:18-cv-00394-JAD-NJK |
| Plaintiff, | |
| vs. | |
| ELAVON, INC., a Georgia Corporation; DOE DEFENDANTS 1 through 10; and ROE DOE DEFENDANTS 1 through 10; | |
| Defendants. | |

## FIRST AMENDED COMPLAINT

Plaintiff, JB Carter Enterprises, LLC dba ATM Merchant Systems, by and through its attorneys, Michael R. Mushkin and L. Joe Coppedge of the law firm Mushkin Cica Coppedge, alleges against Defendant Elavon, Inc. as follows:

## NATURE OF THE ACTION

1.     This action involves the claims for fraud, negligent misrepresentation, breach of contract, contractual and tortious breach of the covenant of good faith and fair dealing, intentional interference with contractual and intentional interference with prospective business relations. Because Defendants' conduct was intentionally done to injure Plaintiff with a willful and

conscious disregard for Plaintiff's rights, in addition to compensatory damages, Plaintiff is entitled to recover punitive damages for the sake of example and by way of punishing Defendant Elavon.

### JURISDICTION AND VENUE

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties. Plaintiff is a Nevada Limited Liability Company with its principal place of business located in Nevada and Defendant is a Georgia corporation with its principal place of business in Atlanta, Georgia.

3. Venue is proper pursuant to 28 USC § 1391(b)(2).

### THE PARTIES

4. Plaintiff, JB Carter Enterprises, LLC dba ATM Merchant Systems ("Plaintiff" or "ATMMS") is and at all relevant times a Nevada Limited-Liability Company doing business in Clark County, Nevada.

5. Defendant Elavon, Inc. ("Elavon") is and at all relevant times was a Georgia Corporation that performed acts in Clark County, Nevada which form the basis of this Complaint. Among other services, Elavon processes credit and debit card transactions for Plaintiff.

6. Upon information and belief, Doe Defendants 1 through 10 are individuals unknown to Plaintiff may be liable for damages with the named Defendant on the allegations set forth in this Complaint. The Doe Defendants include individuals who conspired with Defendants to cause harm to Plaintiff. Plaintiff will seek leave to amend this Complaint to reflect the true names and identities of the Doe Defendants when known.

7. Upon information and belief, Roe Defendants 11 through 20 are entities unknown to Plaintiff which may be liable for damages with the named Defendant on the allegations set forth in this Complaint. The Roe Defendants include the parent, subsidiary and/or affiliated companies of Defendant, the identities of which are presently unknown to Plaintiff, which may be liable for the actions complained of herein. Plaintiff will seek leave to amend this Complaint to reflect the true names and identities of the Roe Defendants when known.

## FACTUAL ALLEGATIONS RELATED TO ALL CLAIMS

8.      Plaintiff is in the business of providing cash advance and merchant account services to meet its clients' needs in gaming and other industries.

9.      Since on or about April 4, 2011, Elavon has served as the processor for Plaintiff's credit and debit card transactions, and in that role, knows the identities of Plaintiff's customers.

10.     In or about 2012, in the wake of numerous large-scale data breaches and increasing rates of counterfeit fraud, U.S. credit and debit card issuers announced they would migrate to a new technology called EMV to protect consumers and reduce the costs of fraud.

11.     EMV, which stands for Europay, Mastercard and Visa, is the global standard for cards equipped with computer chips and the technology used to authenticate chip-card transactions.

12.     The credit and debit cards equipped with computer chips are designed to improve payment security and to make it more difficult for fraudsters to successfully counterfeit cards.

13.     For merchants, like Plaintiff, the switch to EMV meant the addition of new in-store technology and internal processing systems, and complying with new liability rules.

14.     The switch to EMV was anticipated to be accomplished and was accomplished on or about October 1, 2015.

15.     Defendant Elavon, by and through its employees, agents and/or departments, including but not limited to Gavin Rosenberg, Ryan Hicks,  MSP Relationship Management, Elavon Partner Business Enablement, Jake Turnmire, Robert Morris, Steven Velasques, Sara Bednara, Eric Przybylek, represented to Plaintiff on numerous occasions, beginning in late 2012 through 2015, and continuing through the present, both verbally and in writing, that it would be ready for the transition to EMV global payment standard with Elavon's point of sale devices that could accept chip cards as well as magnetic strips and contactless payments. Specifically, Elavon, by and through its employees, agents and/or departments, made the following representations:

16.     In response to an inquiry from Michael Poggi where he expressed a desire to be a part of an EMV pilot program, Gavin Rosenberg wrote an e-mail to Ryan Hicks that was forwarded to Mr. Poggi on November 14, 2012.  Mr. Rosenburg represented that it would likely

not be until the second half of 2013 until Elavon is ready to support EMV when he wrote, "We do not have an ETA on when VM [VirtualMerchant] will be enhanced to support EMV…. But it will likely not be until the 2nd ½ of next year [2013]. There is nothing in the near future. We will likely support the PP320 as that's what we will use in Canada…. Which will happen before the US delivery… as the mandate for EMV was 2 years ago in Canada. Thanks, gavin".

17.     In an e-mail from MSP Relationship Management to Michael Poggi dated January 11, 2013, Elavon represented, "EMV Terminal Launch Date Announced!  On February 14th, Elavon will equip you with the terminals of the future! Elavon is pleased to announce the launch and support date of our new EMV capable terminal lines, the Verifone Evolution and Ingenico Tellium2. These terminals will be available for purchase and support from Elavon beginning on February 14! Terminals purchased from Elavon will be shipped with all necessary applications and will be 'plug and play'."

18.     On March 21, 2013, in an e-mail from MSP Relationship Management to Michael Poggi, Elavon represented, "Elavon Launches New EMV Capable Peripheral for VirtualMerchant. We are pleased to introduce the Equinox L5200, a new signature capture device for use with VirtualMerchant.  The L5200 provides our customers with the latest technology including signature capture, PIN Pad, MSR read head, NFC/Contactless reader and EMV card reader. It will process a range of payment types including credit, debit, EBT and gift cards. The L5200 will work as a customer facing mag-stripe card reader and PIN Pad that will capture and transmit signatures. This peripheral helps protect your customers from chargebacks and prepares them for the future of EMV chip cards."

19.     The accompanying Elavon Product Sheet provided on or about March 21, 2013 for the Equinox L5200 stated, "[t]he L5200 is also fully EMV-certified, ensuring you are ready for the future of EMV "chip" cards to help protect you and your customers from counterfeit card fraud."

20.     On March 19, 2013, Ryan Hicks represented that the Equinox L5200 would be certified EMV hardware that would be EMV functional with remote capability when he wrote to Michael Poggi regarding the Equinox L5200, "Mike, Attached and below is the terminal Steven

mentioned last night that is a new peripheral that will do Signature Capture, EMV, etc. with VM…
We are pleased to introduce the Equinox L5200, a new signature capture devise for use with
VirtualMerchant.   The L5200 provides our customers with the latest technology including
signature capture, PIN Pad, MSR read head, NFC/Contactless reader and EMV card reader…
This peripheral helps protect your customers from chargebacks and prepares them for the future
of EMV chip cards… KEY FEATURES… EMV Certified hardware.  EMV functionality will be
delivered in a future software release, and customers with these devices will be able to remotely
enable their L5200 to support this important security feature."

21.     In response, Michael Poggi wrote to Ryan Hicks on March 20, 2013 wherein he
asked Ryan Hicks regarding the Equinox L5200, "[w]hen can I expect to receive these units?"
Mr. Hicks wrote on March 22, 2013, "You have to request the equipment via the Add Equipment
Services form – deployment happens 24/48 hrs after that. MSP Support (mspwc@elavon.com)
can guide you to the best Elavon terminal group to support these terminals."

22.     On October 23, 2014, Ryan Hicks forwarded an e-mail from Elavon Partner
Business Enablement, which stated, "EMV is Here! As of October 20, 2014, you can now sell
EMV-enabled terminals using Retail Applications to your customers.   Our next-generation
VeriFone Evolution and Ingenico Tellium2 terminals will not be shipped EMV-enabled for your
customers with the exception of the restaurant terminal application.  Due to the sensitivity to new
restaurant customers already in the existing sales pipeline the next generation terminals with a
restaurant application will not ship EMV-enabled until November 3rd so that you are able to
communicate the impact of EMV to Customers in a pay at the table restaurant environment.  Also
please know that any Add Equipment requests for existing accounts will not be EMV Enabled
automatically.   You will need to request EMV Enablement in the "Notes" section of the Add
Equipment Services form.  The learn more, please reference the important communication set
Thursday, October 16th."

23.     Also on October 23, 2014, Ryan Hicks forwarded an e-mail to Mr. Poggi, which
stated, "Hello MSPs, Make sure to register for today's call at 1 PM EST if you or your team wants
to learn more about EMV and Elavon's Options to help you and your customers prepare for this

1 huge industry shift."

2      24.    Mr. Poggi participated in the EMV conference call on October 23, 2014, and upon

3 learning that the Equinox L5200 was not enabled for EMV, he wrote to Ryan Hicks on October

4 27, 2014 as follows, "I was on the EMV conference call.  While the L5200 is EMV ready, it is

5 not enabled.  What will it take to get the L5200 enabled and processing on my application which

6 utilizes Virtual Merchant?"

7      25.    Ryan Hicks replied on October 27, 2014, "Mike, [f]or merchants with EMV

8 capable but not enabled equipment, we are formulating a plan for 2015.  I do not think we have

9 specific guidance on how to update yet." Mr. Hicks copied Partner Sales Support on his e-mail.

10      26.    Jake Turnmire, a Partner Sales Support Consultant wrote to Ryan Hicks and copied

11 Michael Poggi on October 28, 2014, wherein he stated, "Ryan, [y]ou are correct.  At this time no

12 steps have been defined, they are working on the plan for 2015."

13      27.    On December 15, 2014, Ryan Hicks wrote to Michael Poggi, "Mike, I'm following

14 up our call last week: We anticipate having EMV available for Converge in Q1 and Q2.  We do

15 not have any documentation available for you to review or get your developer's working on.  This

16 information will be in the Developer's Guide when we get closer to release."

17      28.    On January 16, 2015, Elavon Partner Business Enablement wrote in an e-mail that

18 was forwarded to Michael Poggi from Ryan Hicks, "[t]ake advantage of our lower EMV

19 equipment pricing today, so your customers can be ahead of the October 2015 liability shift."

20      29.    On January 29, 2015, Elavon Partner Business Enablement wrote in an e-mail to

21 Michael Poggi, "[g]reat news! We have extended our EMV lower equipment pricing promotion

22 so you have more time to take full advantage of our competitive rates.  Educate your customers

23 on the risks of credit card fraud and the importance of making the switch to EMV enabled

24 terminals."

25      30.    On February 11, 2015, Elavon Partner Business Enablement wrote in an e-mail to

26 Michael Poggi, "[g]reat news! We have extended our EMV lower equipment pricing promotion

27 so you have more time to take full advantage of our competitive rates.  Educate your customers

28 on the risks of credit card fraud and the importance of making the switch to EMV enabled

1  terminals."

2      31.     On February 12, 2015, Elavon Partner Business Enablement wrote in an e-mail to

3  Michael Poggi regarding EMV Marketing Materials, "[w]e are excited to share that we now have

4  brand agnostic EMV materials accessible for you to use, customize, and circulate with your

5  customers."

6      32.     On April 3, 2015, Ryan Hicks wrote in an e-mail to Michael Poggi, "Mike, [t]he

7  only one that's EMV ready (not enabled) is the L5200. I'm getting confirmation on if Converge

8  is working on the INGENICO IPP320 and VeriFone VX820."

9      33.     On April 3, 2015, Ryan Hicks further wrote in an e-mail to Michael Poggi, "I just

10  heard that the EMV card reader for Converge will be the Ingenico 250, and it is not released until

11  May."

12      34.     On May 7, 2015, Elavon Business Enablement wrote in an e-mail to Michael

13  Poggi, "To make sure we are fully prepared for the EMV liability shift in October, Elavon is

14  taking every step possible to ensure a smooth transition for our customers, as well as our company.

15  As you know, if a customer has not upgraded to EMV technology by October 1, 2015 and

16  experiences fraudulent card-present charges, their business will be liable for associated costs.

17  Because of this, we are beginning our accelerated migration from non-EMV capable terminal and

18  pin pad options over to EMV enabled solutions... Cease all sales for the Equinox L5200 Effective

19  immediately, Elavon will no longer offer the Equinox L5200 as the Converge Pinpad for EMV.

20  The Elavon Product team is currently working on an EMV Pinpad Solution that will replace the

21  L5200. This new solution will be coming at the end of Q2. We will continue to support the

22  L5200 until further notice. Please reach out to Elavon's support teams with questions you may

23  have."

24      35.     On May 7, 2015, Robert Morris wrote an e-mail to Michael Poggi, "Keep in mind

25  that we will continue to support the L5200, it will just not be an EMV-capable device at Elavon."

26      36.     On May 7, 2015, Michael Poggi wrote to R. Morris, "[s]orry if I was a little blunt

27  yesterday, the news did catch me by surprise. The support of the LS5200 will only be needed up

28  until the change out. EMV is very important to me. The deadline is October 15th of this year. I

first have to have 2 new units (one to my office and one to my team in India) to integrate it into our platform. I do not expect the development time to be too long as we were running Ingenico in the past. Please find out if the new device will just be EMV capable or if we will be able to develop and test to utilize EMV as of this changeover.

37.     On May 21, 2015, Michael Poggi wrote to Steven Velasquez, "I am sending this email in response to the news that the Equinox LS5200 is never going to be certified EMV by Elavon. As you know I purchased 197 of these units with the understanding that they would be made EMV enabled through Elavon. I had two weeks of development and testing to get these units into my application, plus a two month installation process which included 100+ site visits both local and out of state. This puts me in a very bad place for both my company and my customers (interruption of service)."

38.     On May 27, 2015, Sara Bednara wrote to Michael Poggi, ". . . please know that at this time the file and API certification is currently happening and the EMV build and enablement is expected to happen in late July. So currently, similar to the L5200, the device is EMV capable not yet enabled."

39.     On May 28, 2015, Robert Morris wrote Michael Poggi, attaching the Q1 2015 Quarterly Business Review Document, and stated, "<u>I'd like to discuss EMV with you for a few minutes over the phone, and get some answers to some survey questions regarding your approach to EMV, progress, plans, etc. Since you're a quasi-cash MSP partner, there might not be much to discuss!</u>"

40.     In the 2nd Quarter 2015 Review (PLTF000069), Elavon wrote, "Converge Gets EMV Ready Available Now! Ingenico iSC250 and Star TSP650II Printer. The Ingenico iSC250 is a signature-capture PIN pad offering the ability to accept credit cards and PIN-based transactions, like debit card and Electronic Benefit Transfer (EBT) as well as EMV chip card and mobile wallet payments. The device is currently EMV-capable which means it has a slot to accept chip cards, but won't be able to accept a chip card transaction until later in the year after a software download."

41.     On June 25, 2015, Elavon Business Enablement wrote to Michael Poggi, "Let the

EMV Migration Begin! To make sure we are fully prepared for the EMV liability shift in October, Elavon is taking every step possible to ensure a smooth transition for our customers, as well as your company. As you know, if a customer has not upgraded to EMV technology by October 1, 2015 and experiences fraudulent card-present charges, their business will be liable for associated costs. Because of this, we have begun our accelerated migration from non-EMV capable terminal and pin pad options over to EMV enabled solutions."

42.    On October 14, 2015, Robert Morris wrote to Michael Poggi, "Amnesty for all quasi-cash SIC coded merchants has been declined by Elavon/US Bank. We have escalated all the way to the top on this… we'll be working with you to cover the cost of the replacement equipment required for your customers to process EMV quasi cash transactions – I'll be requesting a list of first customers from you, and you could include in your communication to your customers that they should receive equipment in the November timeframe, and to please store it and keep it handy for when the software is ready and that they'll be contacting the customer soon after that timeframe to implement the updated equipment/software…"

43.    Plaintiff's customers did not receive equipment in the November timeframe.

44.    On January 28, 2016, Michael Poggi wrote to Eric Przybylek, "… I just received another certified letter from one of my Casino Locations cancelling their contract with us due to EMV non-compliance. We are about 2/3 of the way through the first quarter, do you have a completion date? What is the plan?"

45.    Eric Przybylek replied to Michael Poggi on January 28, 2016, "I understand your concern and we are working diligently to have a market ready solution. Right now we are targeting the end of February but there are some risks that may push into early March. We have some items left to finish up and will then start performing regression testing on the solution."

46.    On February 22, 2016, Michael Poggi wrote to Eric Przybylek, "As it is nearing the end of February, do you have an update on the timeline of having the EMV product release?"

47.    Eric Przybylek wrote to Robert Morris and Michael Poggi on March 1, 2016, "Here is the latest update. We are marching to a general release at the end of March. We have begun regression testing on the general release and have started creating our integration

documentation.  I believe we are on the schedule to train the MSPs the 2nd week of April.
Knowing Mike's need for this we probably need to get the final agreement started so that it is in
place and allows for them to use in production.  Since Solution Engineering will be supporting
integrations we probably need to put in a request with them as well so that when we have the
general release available that there is a resource assigned to assist."

48.     On April 12, 2016, Eric Przybylek wrote an e-mail to several individuals at Elavon
and Michael Poggi, "I was looking at the test credentials for ATMMS and we need to get them
adjusted or get them new ones.  Based on looking at the account it is setup for internet which will
not work correctly for CSDK.  It should either be adjusted to retail.  Can one of you get the
account updated and make sure it is enabled for EMV?"

49.     Notwithstanding its numerous and continuing representations to the contrary,
Elavon was not ready for the transition to EMV global payment standard with Elavon's point of
sale devices that could accept credit or debit chip cards as well as magnetic strips and contactless
payments.

50.     As of the filing of this First Amended Complaint, Elavon's failure to be ready for
the transition to the EMV global payment standard for debit chip cards continues as its point of
sale devices still do not accept debit chip cards.

## FIRST CLAIM FOR RELIEF

### ("Fraud")

51.     Plaintiffs hereby repeat and reallege each allegation contained in paragraphs 1
through 50 of this Complaint and incorporate the same herein by reference as though fully set
forth.

52.     As set forth above, beginning in late 2012 through 2015, and continuing through
the present, Elavon, by and through its employees, agents and/or departments identified above,
represented numerous times, both verbally and in writing, that it would be ready for the transition
to EMV global payment standard with Elavon's point of sale devices that could accept credit and
debit chip cards as well as magnetic strips and contactless payments.

53.     Elavon's numerous representations were false in that it was not ready for the

1   transition to EMV global payment standard with Elavon's point of sale devices that could accept
2   credit and debit chip cards as well as magnetic strips and contactless payments.

3          54.     In addition, Elavon represented to Plaintiff that Equinox L5200 would be the only
4   approved EMV Pin Pad that would work with Converge.

5          55.     Converge is a flexible secured payment solution utilized by Elavon that accepts a
6   full range of payment options, including but not limited to credit cards, PIN debit cards and
7   electronic gifts.

8          56.     In reliance upon Elavon's representations, Plaintiff purchased 197 Equinox L5200
9   Payment Terminals or Pin Pads also known as the Equinox Payments L5200 at a substantial
10  expense.

11         57.     In or about April or May 2015, Plaintiff learned that Equinox would not be offered
12  as an EMV solution for Converge, and that the Equinox Payments L5200s it purchased in reliance
13  upon Elavon's representations would no longer be usable.

14         58.     Instead, in or about May 2015, Elavon represented that the EMV card reader for
15  Converge would be the Ingenico 250.

16         59.     Elavon knew or should have known that the representations made by its
17  employees, agents and/or departments that it would be ready for the transition to the EMV global
18  payment standard with Elavon's point of sale devices that could accept credit and debit chip cards
19  as well as magnetic strips and contactless payments and that the Equinox L5200 Payment
20  Terminals or Pin Pads would be the only approved EMV Pin Pad that would work with Converge
21  were false, or that such representations were made with insufficient basis for making them.

22         60.     Elavon's representations that it would be ready for the transition to the EMV
23  global payment standard with Elavon's point of sale devices that could accept credit and debit
24  chip cards as well as magnetic strips and contactless payments were intentionally made to induce
25  Plaintiff from obtaining another company to process its credit and debit card transactions.

26         61.     Plaintiff justifiably relied upon the false representations made by Elavon by
27  purchasing the Equinox L5200 Payment Terminals or Pin Pads and by refraining from obtaining
28  another company to process its credit and debit card transactions.

62.     In reliance upon Elavon's false representations and as a direct and proximate result of Elavon's wrongful conduct, Plaintiff has suffered damages in the form of the costs of the Equinox L5200 Payment Terminals or Pin Pads, lost customers, damage to business reputation and lost prospective business in an amount more than $75,000.00.

63.     Elavon's conduct was intentionally done to injure Plaintiff with a willful and conscious disregard for Plaintiff's rights, constituting oppression, fraud and/or malice.

64.     Plaintiff, in addition to compensatory damages, is entitled to recover all attorney's fees it has reasonably incurred and to recover punitive damages for the sake of example and by way of punishing Defendant Elavon to deter similar conduct in the future.

**SECOND CLAIM FOR RELIEF**

**("Negligent Misrepresentation")**

65.     Plaintiffs hereby repeat and reallege each allegation contained in paragraphs 1 through 64 of this Complaint and incorporate the same herein by reference as though fully set forth.

66.     As set forth above, Elavon supplied information, verbally and in writing, by and through its employees, agents and/or departments identified above, to Plaintiff during its business that it would be ready for the transition to the EMV global payment standard with Elavon's point of sale devices that could accept credit and debit chip cards as well as magnetic strips and contactless payments and that the Equinox L5200 Payment Terminals or Pin Pads would be the only approved EMV Pin Pad that would work with Converge.

67.     The information supplied by Elavon that it would be ready for the transition to the EMV global payment standard with Elavon's point of sale devices that could accept credit and debit chip cards as well as magnetic strips and contactless payments and that the Equinox L5200 Payment Terminals or Pin Pads would be the only approved EMV Pin Pad that would work with Converge was false.

68.     Elavon knew or should have known that the representations made by its employees, agents and/or departments that it would be ready for the transition to the EMV global payment standard with Elavon's point of sale devices that could accept credit and debit chip cards

as well as magnetic strips and contactless payments and that the Equinox L5200 Payment Terminals or Pin Pads would be the only approved EMV Pin Pad that would work with Converge were false.

69.     Elavon failed to exercise reasonable care or competence in communicating the information to Plaintiff that it would be ready for the transition to the EMV global payment standard with Elavon's point of sale devices that could accept credit and debit chip cards as well as magnetic strips and contactless payments and that the Equinox L5200 Payment Terminals or Pin Pads would be the only approved EMV Pin Pad that would work with Converge.

70.     Plaintiff justifiably relied upon the false representations made by Elavon by purchasing the Equinox L5200 Payment Terminals or Pin Pads and by refraining from obtaining another company to process its credit and debit card transactions.

71.     As a direct and proximate result of the wrongful conduct of Defendant Elavon, Plaintiff has suffered damages in the form of the costs of the Equinox L5200 Payment Terminals or Pin Pads, lost customers, damage to business reputation and lost prospective business in an amount more than $75,000.00.

72.     Plaintiff is entitled to recover its reasonable attorney's fees and costs of this action.

### THIRD CLAIM FOR RELIEF

### ("Breach of Contract")

73.     Plaintiffs hereby repeat and reallege each allegation contained in paragraphs 1 through 72 of this Complaint and incorporate the same herein by reference as though fully set forth.

74.     Plaintiff and Elavon entered into an oral agreement wherein Elavon agreed, among other things, that it would be ready for the transition to EMV global payment standard and that it would provide point of sale devices that could accept credit and debit chip cards as well as magnetic strips and contactless payments.

75.     Plaintiff fully performed all obligations under the oral agreement, including but not limited to purchasing the requisite chip card readers, or said performance has been waived, suspended or excused.

76.    Elavon breached its obligations under the oral agreement, by failing, among other things to be ready for the transition to EMV global payment standard with Elavon's point of sale devices that could accept credit and debit chip cards as well as magnetic strips and contactless payments.

77.    Elavon further breached its obligations under the oral agreement as the Equinox Payments L5200s Plaintiff purchased in reliance upon Elavon's representations were not usable.

78.    Defendants' breach of the oral agreement was not waived, suspended or otherwise excused.

79.    As a direct and proximate result of the wrongful conduct of Defendant Elavon, Plaintiff has suffered damages in the form of the costs of the Equinox L5200 Payment Terminals or Pin Pads, lost customers, damage to business reputation and lost prospective business in an amount more than $75,000.00.

80.    Plaintiff is entitled to recover its reasonable attorney's fees and costs of this action.

## FOURTH CLAIM FOR RELIEF

### ("Breach of the Covenant of Good Faith and Fair Dealing")

81.    Plaintiffs hereby repeat and reallege each allegation contained in paragraphs 1 through 80 of this Complaint and incorporate the same herein by reference as though fully set forth.

82.    It is well settled in Nevada that every contract imposes upon the contracting parties the duty of good faith and fair dealing.

83.    Elavon owed Plaintiff a duty of good faith and fair dealing.

84.    Implied in the oral agreement is a covenant that Elavon would not interfere with Plaintiff's contracts and/or its prospective business relations.

85.    Elavon consciously and unreasonably interfered with Plaintiff's contracts and prospective business relations.

86.    Defendant breached the duty of good faith and fair dealing when it performed in a manner that was unfaithful to the purpose of the oral agreement and to the justified expectations of Plaintiff.

87.    Defendant breached the duty of good faith and fair dealing by failing, among other things to be ready for the transition to EMV global payment standard with Elavon's point of sale devices that could accept credit and debit chip cards as well as magnetic strips and contactless payments.

88.    Defendant further breached the duty of good faith and fair dealing when the Equinox Payments L5200s Plaintiff purchased in reliance upon Elavon's representations were not usable.

89.    As a direct and proximate result of the wrongful conduct of Defendant Elavon, Plaintiff has suffered damages in the form of the costs of the Equinox L5200 Payment Terminals or Pin Pads, lost customers, damage to business reputation and lost prospective business in an amount more than $75,000.00.

90.    Plaintiff is entitled to recover its reasonable attorney's fees and costs of this action.

### FIFTH CLAIM FOR RELIEF

### ("Tortious Breach of the Covenant of Good Faith and Fair Dealing")

(Dismissed by Court Decision on Plaintiff's motion to dismiss without leave to amend)

### SIXTH CLAIM FOR RELIEF

### ("Intentional Interference with Contractual Relations")

91.    Plaintiffs hereby repeat and reallege each allegation contained in paragraphs 1 through 90 of this Complaint and incorporate the same herein by reference as though fully set forth.

92.    Prior to the transition to EMV, Plaintiff had numerous contracts with businesses to provide credit and debit card terminals and merchant account services in the gaming and other industries.

93.    Elavon knew of these valid and existing contracts.

94.    By failing to be ready for the transition to EMV global payment standard with Elavon's point of sale devices that could accept chip cards as well as magnetic strips and contactless payments, Elavon caused several of Plaintiff's customers to cancel and/or not renew

1    their agreements, thereby disrupting Plaintiff's contracts.

2        95.    The businesses that cancelled and/or elected not to renew their agreements with

3    Plaintiff include, but are not limited to the following:

4        Augustine Casino

5        Buffalo Bill's

6        Primm Valley

7        Whiskey Pete's

8        Cheyenne & Arapaho Casinos

9        Golden Eagle Casino

10       Grand Casino-Hinckley

11       Grand Casino-Mille Lacs

12       Rolling Hills

13       Running Creek

14       Swinomish

15       Twin Pine

16       Best Western KwaTaqNuk

17       Gray Wolf Peak Casino

18       96.    As a direct and proximate result of the wrongful conduct of Defendant Elavon,

19    Plaintiff has suffered damages in the form of lost customers, damage to business reputation and

20    lost prospective business in an amount more than $75,000.00.

21       97.    Defendants' conduct was intentionally done to injure Plaintiff with a willful and

22    conscious disregard for Plaintiff's rights, constituting oppression, fraud and/or malice.

23       98.    Plaintiff, in addition to compensatory damages, is entitled to recover all attorney's

24    fees it has reasonably incurred and to recover punitive damages for the sake of example and by

25    way of punishing Defendant Elavon to deter similar conduct in the future.

26                                 **SEVENTH CLAIM FOR RELIEF**

27             **("Intentional Interference with Prospective Business Relations")**

28       99.    Plaintiffs hereby repeat and reallege each allegation contained in paragraphs 1

through 98 of this Complaint and incorporate the same herein by reference as though fully set forth.

100.    By providing cash advance and merchant account services in the gaming and other industries, Plaintiff enjoyed prospective business contractual relationships with companies in the gaming and other industries.

101.    Elavon knew of these prospective relationships.

102.    By failing to be ready for the transition to EMV global payment standard with Elavon's point of sale devices that could accept credit and debit chip cards as well as magnetic strips and contactless payments, Elavon has interfered with Plaintiff's ability to bid and obtain new business.

103.    The businesses that Plaintiff could not bid because it did not meet EMV specs include, but are not limited to:

Cherokee Nation Gaming

Comanche Nation Gaming

Shoshone-Bannock Tribes Gaming

Eagle Mountain Casino

Fort Randall Casino & Hotel

Lac Vieux Desert Casino

104.    Elavon has interfered with Plaintiff's prospective business contractual relationships.

105.    As a direct and proximate result of the wrongful conduct of Defendant Elavon, Plaintiff has suffered damages in the form of lost customers, damage to business reputation and lost prospective business in an amount more than $75,000.00.

106.    Elavon's conduct was intentionally done to injure Plaintiff with a willful and conscious disregard for Plaintiff's rights, constituting oppression, fraud and/or malice.

107.    Plaintiff, in addition to compensatory damages, is entitled to recover all attorney's fees it has reasonably incurred and to recover punitive damages for the sake of example and by way of punishing Defendant Elavon to deter similar conduct in the future.

**EIGHTH CLAIM FOR RELIEF**

**("Breach of Fiduciary Duty")**

(Dismissed by Court Decision on Plaintiff's motion to dismiss without leave to Amend).

**PRAYER**

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant Elavon as follows:

1.     That this Court award Plaintiff damages against Defendant Elavon in an amount more than $15,000;

2.     That this Court award Plaintiff its reasonable attorney's fees and costs;

3.     That this Court award Plaintiff punitive damages from Defendant in an amount sufficient to punish Defendant and to make an example of Defendant to deter similar conduct in the future; and

4.     That Plaintiff be awarded such other and further relief as the Court may deem just and proper.

DATED this ___/___ day of June, 2018

MUSHKIN • CICA • COPPEDGE

_____
MICHAEL R. MUSHKIN, ESQ.
Nevada State Bar No. 2421
L. JOE COPPEDGE, ESQ.
Nevada State Bar No. 4954
4495 S. Pecos Road
Las Vegas, Nevada 89121
Attorneys for Plaintiff